UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at ASHLAND

CIVIL ACTION NO. 07-31-GWU

| | |
|---|---|
| CARL SALYERS, | PLAINTIFF, |
| VS.          **MEMORANDUM OPINION** | |
| MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL SECURITY, | DEFENDANT. |

## INTRODUCTION

Carl Salyers brought this action to obtain judicial review of an unfavorable administrative decision on his application for Disability Insurance Benefits. The case is before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

07-31 Salyers

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1)

> whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way

4

to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid.  In

such cases, the agency may be required to consult a vocational specialist.  <u>Damron v. Secretary</u>, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that Salyers, a 65 year-old former game warden/supervisor with a high school education, suffered from impairments related to decreased visual acuity and coronary artery disease.  (Tr. 15, 21).  While the plaintiff was found to be unable to return to his past relevant work, the ALJ determined that he retained the residual functional capacity to perform a restricted range of medium level work.  (Tr. 21).  Since the available work was found to constitute a significant number of jobs in the national economy, the claimant could not be considered totally disabled.  (Id.).  The ALJ based this decision, in large part, upon the testimony of a vocational expert.  (Tr. 20).

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence.  Therefore, the Court must grant the defendant's summary judgment motion and deny that of the plaintiff.

The hypothetical question presented to Vocational Expert Leah Salyers included an exertional limitation to medium level work along with such non-exertional restrictions as (1) an inability to ever balance or climb ladders, ropes and scaffolds; (2) a need to avoid exposure to unprotected heights or dangerous, moving machinery; (3) an inability to perform work requiring depth perception or peripheral vision to the right; and (4) a "moderate" limitation of ability to maintain attention and concentration for extended time periods.  (Tr. 382).  In response, the witness identified a significant number of jobs in the national economy which could still be performed.  (Tr. 383).  Therefore, assuming that the vocational factors considered by the expert fairly characterized the plaintiff's condition, then a finding of disabled status, within the meaning of the Social Security Act, is precluded.

The hypothetical question fairly characterized Salyers' condition as required by Varley.  Dr. Jeffrey Ellington examined the plaintiff and opined that he had no limitations with regard to lifting, carrying, standing, walking, sitting, climbing, balancing, stooping, crouching, kneeling, crawling, reaching, handling, feeling, pushing, pulling, hearing, or speaking.  (Tr. 207).  The claimant was reported to need to avoid exposure to moving machinery due to his decreased peripheral vision.  (Id.).  This limitation was included in the hypothetical question.  Dr. Parandhamulu Saranga (Tr. 230-238) and Dr. Calixto Hernandez (Tr. 239-247), the non-examining medical reviewers, each opined that Salyers would be able to

perform medium level work reduced from a full range by his vision problems. The hypothetical factors were consistent with these opinions. More severe restrictions than those found by the ALJ were not identified by such treating and examining sources as the staff at St. Joseph East Hospital (Tr. 52-158), the staff at King's Daughters' Medical Center (Tr. 159-160), Dr. E. Unnikrishnan (Tr. 163-176), the staff at the Retina and Vitreous Associates of Kentucky (Tr. 184-203), and Dr. John Darnell (Tr. 208-229, 317). These reports provide substantial evidence to support the administrative decision.

     Dr. John Gross, a treating physician, completed an assessment form which included <u>no</u> limitations on lifting/carrying, standing/walking or sitting, an inability to ever balance or climb, limitations on seeing, and the need to avoid exposure to heights or moving machinery. (Tr. 251-253). The factors of the hypothetical question were essentially consistent with these restrictions. On another form, the doctor indicated that Salyers would not be able to stand and work with his arms and hands for six to eight hours a day. (Tr. 254). This restriction was contradictory to the physician's notations on the other assessment form upon which he specifically indicated that standing and walking were not affected by his impairments and no limitation was indicated on pushing and pulling. (Tr. 251, 253). On the second form, Dr. Gross also indicated that the claimant would not be able to drive a motor vehicle for six to eight hours. (Tr. 254). The stock handling and packaging

07-31  Salyers

positions identified by the vocational expert would not appear to require such driving.  (Tr. 383).  Finally, Dr. Gross also indicated that the plaintiff would not be able to maintain concentration and attention. (Tr. 254).  The doctor gave no reason to support this restriction. The ALJ included in his findings a "moderate" limitation on maintaining attention and concentration due to pain complaints.   (Tr. 19).  However, Dr. Gross did not specify pain complaints as the reason for this restriction.  Furthermore, the doctor's treatment records do not indicate pain complaints of such severity to totally preclude one's ability to maintain attention and concentration.  In January of 2003, Salyers felt well enough to ask Dr. Gross for permission to start exercising again.[1]  (Tr 271). In February of 2003 the claimant himself stated that while he had aches and pains, he was doing all right.  (Tr. 266).  In December of 2005, the doctor noted that the plaintiff had only a "little bit of pain and discomfort out of the right eye." (Tr. 318).  Therefore, the ALJ dealt properly with the evidence from Dr. Gross.

     Salyers argues that the ALJ erred by failing to even consider the opinion of Dr. Jason Rice.  Dr. Rice completed an assessment form upon which he noted more severe physical restrictions than were found by the ALJ in such areas as reaching, handling, pushing, or pulling as well as the need to avoid exposure to temperature

---

[1] The record reveals that the plaintiff was a great exercise enthusiast, stating in June of 2002 that he walked four miles and ran two miles three times a week and ran six miles in races.  (Tr. 316).

extremes, chemicals, dust, noise, fumes, humidity, and vibration. (Tr. 181-182). However, the ALJ actually noted several reasons why he rejected this opinion, including the lack of testing performed by the doctor and the lack of explanation for many of the restrictions such as those relating to temperature extremes, dust, and humidity which the ALJ felt did not follow from the doctor's diagnoses of right eye blindness and mild left ventricular hypertrophy. (Tr. 19). The Court also notes that the physician's opinion was offset by those of Dr. Ellington and Dr. Gross. The doctor's report was also internally contradictory--at one point indicating that the claimant had no limitations with regard to lifting and carrying (Tr. 181) while at another place indicating that he could not lift 25 to 50 pounds (Tr. 183). Therefore, Dr Rice's opinion was properly rejected by the ALJ. Salyers also asserts that the ALJ erred by failing to address the opinion of Dr. Brian Sosnin, another examining source. Dr. Sosnin did report more severe restrictions concerning stooping, crouching, kneeling, crawling, reaching, handling, pushing, pulling, and exposure to environmental pollutants than was found by the ALJ. (Tr. 322-323). Again, the ALJ did not ignore this opinion but indicated that he did not feel that many of these restrictions were well supported in the record. (Tr. 19). The Court notes that the doctor's opinion is offset by those of Dr. Ellington and Dr. Gross. Furthermore, Dr. Sosnin also completed his report in a contradictory fashion, noting at one point that the claimant's impairments would not affect his ability to lift or carry (Tr. 322) while

in another part of the report indicating that the plaintiff could not lift 25 to 50 pounds (Tr. 324). Therefore, this report was properly rejected by the ALJ.

Salyers argues that the ALJ erred in failing to find that his hernia condition was a "severe" impairment. The plaintiff notes that Dr. Unnikrishnan made reference to his hernia problems. (Tr. 170-171). However, the doctor did not identity the existence of more severe physical restrictions than those found by the ALJ which would be attributable to this condition. The mere diagnosis of a condition does not prove its severity and its disabling effects must still be shown. Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988). Therefore, the Court finds no error.

Salyers asserts that the ALJ erred in evaluating his back problems, complaining that the ALJ relied upon the opinion of Dr. Ellington and ignored the opinion of his "treating physician" without stating which treating doctor was improperly rejected. The record indicates that the plaintiff's treating sources included Dr. Gross (Tr. 248-305, 318-319) and the staff at the Retina and Vitreous Associates of Kentucky (Tr. 184-203) who saw him for eye problems, Dr. Unnikrishnan who saw him mainly for prostate problems (Tr. 163-176) and Dr. Darnell who saw him for heart problems (Tr. 208-229). No treating physician appears to have issued an opinion concerning the claimant's back condition which was ignored by the ALJ. Dr. Rice (Tr. 177-183) and Dr. Sosnin (Tr. 320-327) were not treating physicians and neither doctor issued an opinion concerning back

problems. Dr. Ellington examined the plaintiff and opined that he found no evidence of functional restrictions relating to back pain. (Tr. 207). Under these circumstances, this opinion provides strong support for the ALJ. Therefore, the Court finds no error.

Salyers asserts that the ALJ erred in failing to consider the combined effect of all of his impairments. However, the Court has already concluded that the hypothetical question fairly depicted the plaintiff's condition. Therefore, the ALJ implicitly considered all of the claimant's impairments in combination.

Salyers argues that the ALJ erred in finding that he had "transferable skills." However, the ALJ specifically found that "the claimant does not have transferable skills from skilled work previously performed." (Tr. 21). Since the plaintiff was properly found to be able to perform medium level work, the issue of transferable skills was not critical in this case because Rule 203.07 of the Medical-Vocational Guidelines would still mandate a finding of not disabled.[2] Therefore, the Court rejects Salyers' argument.

After a review of the evidence presented, the undersigned concludes that the administrative decision should be affirmed. Therefore, the Court must grant the

---

[2] Rules 201.02 and 202.02 of the Medical-Vocational Guidelines would mandate a finding of disabled status if the claimant were restricted to either light or sedentary level work.

07-31  Salyers

defendant's summary judgment motion and deny that of the plaintiff. A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 9th day of January, 2008.

Signed By:
G. Wix Unthank
United States Senior Judge